Case No. 16-16269

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

THE CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER, on behalf of itself, and ANN CUPOLO FREEMAN, RUTHEE GOLDKORN, and JULIE REISKIN, on behalf of themselves and a proposed class of similarly situated persons,

Plaintiffs-Appellants,

v.

HOSPITALITY PROPERTIES TRUST,

Defendant-Appellee.

---

Appeal from the United States District Court for the Northern District of California, No. 3:15-cv-00221-JST, Honorable Jon S. Tigar

---

### PETITION FOR PANEL REHEARING AND REHEARING EN BANC

---

Timothy P. Fox
CIVIL RIGHTS EDUCATION AND
ENFORCEMENT CENTER
104 Broadway, Suite 400
Denver, CO 80203
(303) 757-7901

Julia Campins
CAMPINS BENHAM-BAKER, LLP
935 Moraga Road, Suite 200
Lafayette, CA 94549
(415) 373-5333

Bill Lann Lee
CIVIL RIGHTS EDUCATION AND
ENFORCEMENT CENTER
2120 University Ave.
Berkeley, CA 94704
(510) 431-8484

Deborah Gettleman*
DISABILITY RIGHTS CALIFORNIA
1330 Broadway, Suite 500
Oakland, CA 94612
(510) 267-1200

*Attorneys for Plaintiffs-Appellants*
*\*Attorney for California Plaintiffs-Appellants Cupolo Freeman and Golkorn*

# **TABLE OF CONTENTS**

Table of Authorities…………………………………………………………..…ii

Introduction and Rule 35(b) and 40(a)(2) Statement………………………….…1

Background…………………………………………...…………………………4

Reasons for Granting Rehearing…………………………..………………………..8

    I.     The Majority's Analysis of HPT's Liability for Title III Violations at Its Hotels Overlooked, and Directly Conflicts With, *Botosan*………....8

    II.    The Majority's Holding that Plaintiffs Had Not Established Commonality Based on HPT's Widespread Practice of Discrimination Conflicts with Numerous Decisions by This Court……........................10

    III.   The Majority Disregarded Common Questions Identified by Plaintiffs, in Conflict with Supreme Court and Circuit Precedent…...……...…..12

    IV.   Rehearing En Banc Is Necessary Because the Question of Whether an Entity Covered by Title III Can Contract Away its Title III Obligations Is of Exceptional Importance……………………………...………..…15

Conclusion……………………………………………………………...17

Certificate of Compliance

Certificate of Service

ADDENDUM A: OPINION

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001)……………………………………...…2-3, 11

*Botosan v. Paul McNally Realty*,
    216 F.3d 827 (9th Cir. 2000)………………………………………..passim

*Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*,
    -- F.3d --, No. 16-16269, 2017 WL 3401319 (9th Cir. Aug. 9, 2017) ………6

*Civil Rights Educ. & Enf't Ctr v. Hosp. Props. Tr.*,
    317 F.R.D. 91 (N.D. Cal. 2016)…………………………………………..6

*Disabled Rights Action Comm. V. Las Vegas Events, Inc.*,
    375 F.3d 861 (9th Cir. 2004)……………..………………………………..8

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011)………………………………………….…..12

*Evon v. Law Offices of Sideny Mickell*,
    688 F.3d 1015 (9th Cir. 2012)……………………………………………13

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014)…………………………………...…3, 11-12, 13

*PGA Tour, Inc. v. Martin*,
    532 U.S. 661 (2001)…………………………………………………...15, 16

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010)…......................................................3, 11, 13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)…………………………………...……....…3, 5, 12, 13

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013)……………………………….…………3, 13

## Federal Statutes

42 U.S.C. § 12101(b)(1)…………...…………………………………………...15

42 U.S.C. § 12182………………………………………………………1, 4, 10, 15

## Federal Rules

Fed. R. Civ. P. 23(a)(2)……………………………………………………passim

Fed. R. Civ. P. 23(a)(3)………………………………………………………..7

Fed. R. Civ. P. 23(b)(2)……………………...……………………………………10

Fed. R. Civ. P. 23(f)………………………………………………………………6

## Federal Regulations

28 C.F.R. § 36.104……………………………………….……………16

28 C.F.R. § 36.310(c)…………………...……………………………………16

49 C.F.R. § 37.101……………………………………………………….……1, 4

49 C.F.R. § 37.105……………………………………………………………1, 4

49 C.F.R. § 37.171………………………………………………………………1, 4

49 C.F.R. § 37.3……………………………………………………...………16

## Legislative Materials

H.R. Rep. No. 101-485, pt. 2 (1990),
    *as reprinted in* 1990 U.S.C.C.A.N 303…………………………………15, 16

S. Rep. No. 101-116 (1989)………………………….………………..………...15

## Introduction and Rule 35(b) and 40(a)(2) Statement

Plaintiffs-Appellants filed this class action challenging Defendant-Appellee hotel owner's pattern and practice of failing to provide accessible transportation services at its hotels, as required by the Equivalent Transportation Requirements[1] of Title III of the Americans with Disabilities Act ("Title III"). The district court denied class certification on the grounds that Plaintiffs had not satisfied the commonality requirement of Rule 23(a)(2) of the Federal Rules of Civil Procedure, which decision was upheld by a majority of the panel in this Court. One judge dissented, recognizing that "[t]he denial of equivalent transportation in violation of the ADA stands at the heart of [Plaintiffs'] claims for relief. This shared legal issue satisfies the commonality requirement." Dissent at 26.[2]

The majority's decision incorrectly held that Defendant-Appellant Hospitality Properties Trust ("HPT") could contract away to management companies its ADA obligations and liability, and that no class was proper in the absence of evidence of a *de facto* policy that HPT actively discouraged its contractors from complying with the ADA. Opinion at 20-21. These holdings overlook, and directly conflict with, a number of Circuit precedents:

---

[1] *See* 42 U.S.C. § 12182(b)(2)(B) & (C); 49 C.F.R. §§ 37.101, 37.105 & 37.171.

[2] Plaintiffs are submitting a copy of the panel's Opinion (including the dissent) simultaneously with the filing of this Petition.

1

- *Botosan v. Paul McNally Realty*, 216 F.3d 827, 832-34 (9th Cir. 2000) held that an entity responsible for compliance with Title III may not contract away its responsibility for compliance, and remains fully and directly liable for ADA violations to persons with disabilities regardless of any contractual provisions. The majority did not consider *Botosan*, and the majority's conclusion that HPT could delegate to management companies liability for the unrebutted Title III violations established by Plaintiffs-Appellants directly contradicts *Botosan*'s important holding.

- The majority held that it was not sufficient for Plaintiffs to allege and prove widespread violations of the Equivalent Transportation Requirements at HPT's hotels, but rather Plaintiffs were also required to establish that HPT has in place a *de facto* policy discouraging its contractors from complying with the ADA. This holding conflicts both with the substance of the ADA, and with numerous decisions by this Court holding that the commonality requirement is met by classes challenging, in whole or in part, a defendant's practice of not complying with legal obligations, even where such violations are not set forth in any official policy, including:

  o *Armstrong v. Davis*, 275 F.3d 849, 868-69 (9th Cir. 2001) (finding commonality requirement was met where "plaintiffs all suffer[ed] a

2

refusal or failure to afford them accommodations as required by statute . . ."));

- o *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) (finding commonality requirement met by class challenging, among other things, defendant's alleged widespread practices of failing to comply with legal requirements concerning provision of medication, treatment, and other medical care to prisoners); and

- o *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (finding commonality established based on a common practice of unlawful prolonged detention while in immigration proceedings).

- Commonality is established by a common question, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "'So long as there is "even a single common question," a would-be class can satisfy the commonality requirement of Rule 23(a)(2).'" *Parsons*, 754 F.3d at 675 (quoting *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) and *Wal-Mart*, 564 U.S. at 359). Plaintiffs in their briefing identified several common questions, each of which is "central to the validity" of class members' claims and can be resolved in one stroke in this litigation. The majority overlooked these common questions in holding

3

that Rule 23(a)(2) commonality was not established, a holding that is thus in conflict with Supreme Court and Circuit precedent.

- Finally, rehearing en banc is necessary because the question of whether an entity covered by Title III of the ADA can contract away its ADA obligations is of exceptional importance. If the majority's opinion stands, it will provide a roadmap for individual and systemic violation of Title III and other civil rights laws.

### Background

Title III of the ADA prohibits places of public accommodation from discriminating on the basis of disability. 42 U.S.C. § 12182(a). Among other things, the Equivalent Transportation Requirements requires hotels that provide transportation services to guests to also provide equivalent, wheelchair-accessible transportation services. *See* 42 U.S.C. § 12182(b)(2)(B) & (C); 49 C.F.R. §§ 37.101, 37.105 & 37.171.

Plaintiffs brought a class action lawsuit seeking only declaratory and injunctive relief against HPT, a Real Estate Investment Trust ("REIT"), which owns over 140 hotels that provide transportation services to guests and are thus subject to the Equivalent Transportation Requirements. *See* Appellants' Opening Brief ("Opening Brief"), Docket No. 10-1 at 4, 10. HPT, to take advantage of tax benefits available to REITs, enters into Management Agreements with independent

4

contractors that assign to those contractors sole responsibility for managing and operating HPT hotels. *See id.* at 10.

Based on pre-filing research, Plaintiffs alleged that numerous hotels owned by HPT do not comply with the Equivalent Transportation Requirements. Ultimately, in support of their motion for class certification, Plaintiffs submitted unrebutted evidence demonstrating that more than 90% of HPT's hotels subject to the Equivalent Transportation Requirement do not comply with those requirements. *See id.* at 12.

Plaintiffs moved for certification of a class of persons who use wheelchairs or scooters who have been, or in the future will be, denied equivalent accessible transportation at an HPT-owned hotel. *Id.* at 4-5. As required by Rule 23(a)(2), Plaintiffs identified several common questions crucial to each class member's claim that would "resolve an issue that is central to the validity of each one of the claims in one stroke." *See Wal-Mart*, 564 U.S. at 350. These questions include: whether the Management Agreements relieve HPT of liability to class members;[3] whether the Equivalent Transportation Requirements apply only to operators of hotel transportation systems, and whether HPT –in addition to its undisputed status

---

[3] *See* Opening Brief at 10 n.9; Appellants' Reply Brief ("Reply"), Docket No. 35-1, at 3-4, 29-31.

5

as owner of the hotels – also met the definition of "operator;"[4] and whether the REIT tax provisions preclude a court from entering an injunction against HPT.[5] Plaintiffs also submitted unrebutted evidence demonstrating that the vast majority of HPT's hotels are in violation of the Equivalent Transportation Requirements.

The district court denied class certification, holding that the class did not meet the commonality or typicality requirements of Rule 23(a). *Civil Rights Educ. & Enf't Ctr v. Hosp. Props. Tr.*, 317 F.R.D. 91, 103-05 (N.D. Cal. 2016). On July 19, 2016, this Court granted Plaintiffs' Rule 23(f) petition for an immediate appeal of the class certification denial. Docket No. 6.

A divided panel of this Court affirmed in a published decision. *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, -- F.3d --, No. 16-16269, 2017 WL 3401319 (9th Cir. Aug. 9, 2017). The majority affirmed the district court's determination that the class did not meet the commonality requirement of Rule 23(a)(2) of the Federal Rules of Civil Procedure, Opinion at 19-22, but did not address whether the class meets the typicality requirement of Rule 23(a)(3), *id.* at 22-23.[6]

---

[4] Reply at 2-3. This question was addressed in Plaintiffs' Reply because it was raised for the first time in this litigation in HPT's Answering Brief to this Court. *See* Reply at 2.

[5] Opening Brief at 10-12; Reply at 22.

[6] Plaintiffs rely on the arguments they made in their opening and reply briefs as to why the typicality requirement is met, as well as the dissent's analysis of the same issue. *See* Dissent at 26-27.

6

The majority did not address the common questions identified by Plaintiffs, or the unrebutted evidence of widespread violations of the Equivalent Transportation Requirements at HPT hotels. Rather, the majority opinion focused on the Management Agreements, holding, based on provisions in those Agreements, that "it is the management companies, not HPT, that decide whether to offer local transportation services and that set the terms on which those services operate." Opinion at 19. Because HPT was not involved in decisions concerning transportation services, the majority held that to establish commonality, Plaintiffs must establish that HPT actively discouraged its contractors from complying with the ADA. *Id.* at 20.

Plaintiffs relied extensively on *Botosan* for the proposition that HPT cannot contract away its ADA obligations.[7] The majority did not acknowledge, address, or distinguish *Botosan*, instead relying on principles it imported from tort law. Opinion at 21. The majority concluded that these tort principles do not preclude HPT from contractually delegating its ADA obligations to its managers, with the result that at most, HPT would be vicariously liable to pay for any tortious conduct by its managers. *Id.* While this is, at bottom, a merits question, the majority relied on this conclusion to reject Rule 23(a)(2) commonality.

---

[7] *See* Opening Brief at 10 n.9; Reply at 3-4, 29-31.

7

<u>**Reasons for Granting Rehearing**</u>

**I.    The Majority's Analysis of HPT's Liability for Title III Violations at Its Hotels Overlooked, and Directly Conflicts With, *Botosan*.**

*Botosan* addressed whether a lease purporting to place all obligations to comply with the ADA on the lessee eliminated the landlord's liability for Title III obligations on its property. 216 F.3d at 832-34. After analyzing the language of Title III, its legislative history, and relevant regulations, *Botosan* held that it did not. *Id.* at 834. Specifically, *Botosan* held that an owner "has an independent obligation to comply with the ADA that may not be eliminated by contract," and that any contract allocating responsibilities under the ADA "has no effect on the rights of third parties," specifically, people with disabilities protected by the ADA. *Id*. at 833.  Despite any such agreement, an owner remains "'fully liable for compliance with all provisions of the ADA.'" *Id*. (citation omitted); *see also Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 873 (9th Cir. 2004) (Holding that "private entities otherwise covered by Title III may not avoid their obligations through contract . . .").

The majority, based on tort principles and without citing *Botosan*, held that HPT could contractually delegate its ADA obligations to third parties. "Contrary to CREEC's contention, however, the [nondelegable duty] concept 'does not mean that an actor is not permitted to delegate [an] activity to an independent contractor.'" Opinion at 21 (citations omitted). Because, pursuant to the

8

Management Agreements, HPT had no involvement in the management or operations of its hotels, the majority concluded that it was not sufficient for Plaintiffs to demonstrate violations of the Equivalent Transportation Requirements at HPT hotels, but rather must also establish that HPT actively discouraged its managers from complying with Title III. *Id.* at 20.

This holding directly conflicts with *Botosan*. Under *Botosan*, HPT has an independent obligation to comply with the ADA that is not eliminated by the Management Agreements, and it remains fully and directly liable for compliance with the ADA regardless of those agreements. Thus simply demonstrating that HPT's hotels violate those requirements is sufficient under *Botosan* to establish HPT's liability for those violations without any additional proof that it discouraged its managers from complying with the ADA. And as set forth below, demonstrating that these violations have occurred at numerous HPT hotels demonstrates a pattern or practice of violations, which establishes commonality.

En banc review is necessary to maintain uniformity in this Circuit on the question whether an entity covered by Title III can contract away its Title III obligations to a third party.

## II. The Majority's Holding That Plaintiffs Had Not Established Commonality Based on HPT's Widespread Practice of Discrimination Conflicts with Numerous Decisions by This Court.

Plaintiffs alleged and demonstrated numerous and widespread violations of the Equivalent Transportation Requirements at HPT hotels, but the majority held that this did not establish commonality because "merely pointing to a pattern of harm, untethered to the *defendant's conduct*, is insufficient." Opinion at 20 (emphasis added). The majority erred because it failed to recognize that the relevant conduct at issue here is HPT's widespread and consistent practice of failing to comply with Equivalent Transportation Requirements at its hotels. The majority's view that Plaintiffs must also establish that HPT actively discouraged its contractors from complying with these Requirements is wrong as a matter of substantive ADA law, and is not required to establish commonality under Rule 23.

HPT has a mandatory obligation under the ADA to provide equivalent accessible transportation services at its hotels, one that under *Botosan* it cannot contract away. Indeed, the ADA defines discrimination to include the "fail[ure]" by covered entities to provide equivalent accessible transportation services. *See* 42 U.S.C. § 12182(b)(2)(B)(ii) & (C)(i).

Further, Rule 23(b)(2) explicitly contemplates certification of a class where the defendant has "*refused to act* on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2) (emphasis added).

10

This Court has repeatedly held that the commonality requirement is met by classes challenging, in whole or in part, a defendant's failure to comply with constitutional or statutory obligations. For example, *Armstrong* held that the commonality requirement was met where "plaintiffs all suffer[ed] a refusal or failure to afford them accommodations as required by statute . . ." 275 F.3d at 868-69.[8]

Similarly, *Rodriguez* involved a challenge to a practice of holding detainees for longer than six months, in violation of statutory and constitutional requirements. 591 F.3d at 1123-24. That is no different than this case, in which Plaintiffs challenge HPT's widespread practice of not providing equivalent wheelchair accessible transportation services in violation of the ADA.

Finally, the fact that the commonality requirement is met by classes challenging a defendant's failure to comply with legal requirements is demonstrated by *Parsons*, in which a class of inmates in Arizona prisons challenged multiple conditions of their confinement as in violation of constitutional requirements. 754 F.3d at 664-678. The majority distinguished

---

[8] The majority argues that *Armstrong* involved a challenge to a written policy, Opinion at 21, but *Armstrong* made clear in a separate section entitled (in bold) "Practice" that the class was also challenging numerous practices not found in written policies. 275 F.3d at 863-64 ("In conjunction with the Board's written policy, its practice throughout the parole and parole revocation process routinely deprives disabled prisoners and parolees of their rights under the ADA.").

*Parsons* as involving detailed factual allegations concerning the existence of uniform, statewide policies and practices. Opinion 21-22. Reviewing the alleged practices in *Parsons*, however, reveals that several such practices consist of a failure to comply with legal obligations, just as Plaintiffs allege here. For example, some of the uniform practices identified in *Parsons* included: "failure to 'provide prisoners with timely emergency treatment;' failure to 'provide necessary medication and medical devices to prisoners;' a practice of 'employ[ing] insufficient health care staff;' failure to 'provide prisoners with care for chronic diseases and protection from infectious diseases;' and failure to 'provide timely access to medically necessary specialty care.'" 754 F.3d at 664. There is no meaningful distinction between the *Parsons* defendants' practice of failing to provide necessary medication, and HPT's (alleged and proven) practice of failing to provide equivalent wheelchair accessible transportation.

## III. The Majority Disregarded Common Questions Identified by Plaintiffs, in Conflict with Supreme Court and Circuit Precedent.

Commonality, which is construed permissively,[9] simply requires that Plaintiffs identify a single common legal or factual question that "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "'So long as there is even a

---

[9] *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).

12

single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2).'" *Parsons*, 754 F.3d at 676 (quoting *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) and *Wal-Mart*, 564 U.S. at 359).

In their briefs, Plaintiffs identified a number of common questions crucial to the validity of each class member's claim that could be resolved in one stroke in this litigation, thus establishing commonality. [10] The majority overlooked these questions, resulting in a decision that conflicts with Supreme Court and Circuit precedent. [11]

First, commonality is established by the central legal question of whether the Management Agreements relieve HPT of its direct liability to the class for ADA violations at its hotels. Plaintiffs argued that under *Botosan*, HPT's Management

---

[10] The majority identified two common questions from Plaintiffs' First Amended Complaint. Opinion at 6-7. The majority did not, however, consider the common questions identified in Plaintiffs' district court and appellate briefs, many of which arose based on arguments that HPT made after the filing of the Amended Complaint.

[11] The majority's failure to consider these common questions is also significant in light of its holding that commonality does not exist due to purported factual differences at HPT hotels. Opinion at 20. As long as one common question exists, then commonality is established even if there are divergent factual patterns among the class. *See* Dissent at 25 (citing *Rodriguez v. Hayes*, 591 F.3d 1105, 1123 (9th Cir. 2010)); *see also Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (holding that as long as one common question exists, "it is not necessary that members of the proposed class 'share every fact in common.'" (Citation omitted.)).

Agreements do not relieve it of liability to the class for violations of the ADA at its hotels. *See* Opening Brief at 10 n.9; Reply at 3-4, 29-31. As set forth above, the majority, relying on tort principles, disagreed and held that HPT could delegate its ADA obligations to its contractors. As a substantive matter, the majority's holding conflicts with *Botosan*. Equally important for purposes of class certification, the question of whether the Management Agreements relieve HPT of its direct liability to the class is central to the validity of each class member's claim and thus establishes commonality.

Second, commonality is established by HPT's argument (which it raised for the first time in its appellate answering brief) that the Equivalent Transportation Requirements apply only to transportation system operators, and that it is not an operator. *See* Reply at 2-3. This is a crucial question: if HPT is right, then it has no obligation to provide equivalent transportation services. Because this question is common to every class member's claim, and goes to HPT's liability, it too establishes commonality.[12]

Finally, commonality is established based on HPT's argument that even if it is required to comply with the Equivalent Transportation Requirements, "any

---

[12] In footnote 5 on page 22 of the Opinion, the majority acknowledged this argument and properly chose not to resolve it as it goes to the merits. The majority, however, failed to recognize that the question itself was common to the class and thus satisfied Rule 23(a)(2).

injunction ordering HPT in some way to operate the shuttle services cannot be lawfully made." *See* Opening Brief at 10-12, 22; Excerpts of Record ("ER") Docket No. 11-2, at 26. Because the only relief available under title III is injunctive relief, the resolution of this issue will have an enormous impact on the relief that can be obtained against HPT. This argument applies to any claim brought by any class member, it is crucial to the validity of each such claim, and can be resolved here in one stroke.

## IV. Rehearing En Banc Is Necessary Because the Question of Whether an Entity Covered by Title III Can Contract Away Its Title III Obligations Is of Exceptional Importance.

The ADA was passed to provide a "clear and comprehensive national mandate for the elimination of discrimination against people with disabilities." 42 U.S.C. § 12101(b)(1). One purpose of this "broad mandate" was to "integrate [people with disabilities] 'into the economic and social mainstream of American life.'" *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001) (quoting S. Rep. No. 101–116 at 20 (1989); H.R. Rep. No. 101–485, pt. 2, at 50 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 303, 332. Title III prohibits disability discrimination by those who "own, operate, lease (or lease to)" places of public accommodation. 42 U.S.C. § 12182(a). The Supreme Court has held that what constitutes a "public accommodation" "'should be construed liberally' to afford people with disabilities

'equal access' to the wide variety of establishments available to the nondisabled." *PGA Tour*, 532 U.S. at 676-77.

Title III's text, implementing regulations, interpretive guidance, and legislative history repeatedly make clear that a public accommodation is prohibited from "doing indirectly through a contractual relationship, what it may not do directly." H.R. Rep. No. 101–485, pt. 2, at 101101 (1990), *as reprinted in* 1990 U.S.C.C.A.N., 303, 384. Indeed, the regulations that specifically govern the conduct at issue here apply to "public accommodations," 28 C.F.R. § 36.310(c), which include owners, operators, lessees and lessors, 28 C.F.R. § 36.104, and the definition of "operates" for purposes of the Equivalent Transportation Requirements includes providing transportation services through "a person under contractual or other arrangement or relationship with the entity." 49 C.F.R. § 37.3.

Despite this clear and comprehensive guidance, the majority's decision suggests that an entity governed by Title III of the ADA may avoid liability by contracting out the service in question and remaining ignorant of its contractors' violations. This question is of exceptional importance because establishing contractual relationships to conform to the majority's opinion and avoid Title III liability will be simple -- and completely antithetical to the language and purpose of Title III.

16

## <u>Conclusion</u>

For the reasons set forth above, Plaintiffs respectfully request that their

Petition for Panel Rehearing and Rehearing En Banc be granted.


Dated:   September 6, 2017                    Respectfully submitted,

                                             CIVIL RIGHTS EDUCATION AND
                                             ENFORCEMENT CENTER

                                    By:    <u>/s/ Timothy P. Fox</u>
                                           *Attorneys for Plaintiffs-Appellants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Ninth Circuit Rule 35-4 or 40-1, I certify that the attached

Petition for Panel Rehearing and Rehearing En Banc is proportionately spaced, has

a typeface of 14 points or more, and contains 3,619 words.

Dated: September 6, 2017                                   s/Timothy Fox

## **CERTIFICATE OF SERVICE**

I, Timothy P. Fox, certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate CM/ECF system on September 6, 2017.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/Timothy P. Fox

# ADDENDUM A
# OPINION

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER, on behalf of itself; ANN CUPOLO-FREEMAN; RUTHEE GOLDKORN; JULIE REISKIN, on behalf of themselves and a proposed class of similarly situated persons defined below, *Plaintiffs-Appellants*, <br><br> v. <br><br> HOSPITALITY PROPERTIES TRUST, *Defendant-Appellee.* | No. 16-16269 <br><br> D.C. No. 3:15-cv-00221-JST <br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted May 15, 2017
San Francisco, California

Filed August 9, 2017

Before:  Andrew J. Kleinfeld and Kim McLane Wardlaw, Circuit Judges, and Brian M. Morris,[*] District Judge.

Opinion by Judge Wardlaw;
Partial Concurrence and Partial Dissent by Judge Morris

---

## SUMMARY[**]

---

### Americans with Disabilities Act / Standing / Class Certification

The panel affirmed the district court's order denying plaintiffs' motion for class certification in an action under Title III of the Americans with Disabilities Act regarding transportation services at hotels.

The panel held that the plaintiffs had standing to maintain this ADA suit.  The panel held that a plaintiff who lacks firsthand knowledge that an establishment is not in ADA compliance may rely on the "deterrent effect doctrine" to establish constitutional standing under the ADA. Agreeing with the Tenth and Eleventh Circuits, the panel held that a plaintiff may also assert constitutional standing where her only motivation for visiting a facility is to test it for ADA compliance.

---

[*] The Honorable Brian M. Morris, United States District Judge for the District of Montana, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that the district court did not abuse its discretion in finding that the plaintiffs failed to meet the commonality requirement of Fed. R. Civ. P. 23(a), given the lack of consistent policies or practices across the hotels owned by the defendant but operated by others.

Concurring in part and dissenting in part, District Judge Morris concurred in the majority's analysis of standing. Dissenting from the majority's determination that the district court did not abuse its discretion in denying class certification, Judge Morris wrote that the plaintiffs satisfied the commonality and typicality requirements of Rule 23.

---

## COUNSEL

Timothy P. Fox (argued), Civil Rights Education and Enforcement Center, Denver, Colorado; Bill Lann Lee, Civil Rights Education and Enforcement Center, Berkeley, California; Julia Campins, Campins Benham-Baker LLP, Lafayette, California; Julie Wilensky, Disability Rights California, Oakland, California; for Plaintiffs-Appellants.

David Raizman (argued), Christopher F. Wong, and Kathleen J. Choi, Ogletree Deakins Nash Smoak & Stewart P.C., Los Angeles, California, for Defendant-Appellee.

Lindsay Nako, Jocelyn D. Larkin, and Lynnette Miner, Impact Fund, Berkeley, California, for Amici Curiae Impact Fund, Disability Rights Advocates, Disability Rights Education & Defense Fund, Disability Rights Legal Center, Disability Rights Oregon, Disability Rights Washington, Equal Rights Advocates, Legal Aid Association of California, Legal Aid Society – Employment Law Center,

National Association of the Deaf, National Disability Rights
Network, and National Federation of the Blind.

## OPINION

WARDLAW, Circuit Judge:

This case presents two questions of constitutional
standing to assert claims under Title III of the Americans
with Disabilities Act ("ADA"), and the question of whether
those claims are maintainable as a class action. We must
decide (1) whether a plaintiff may rely on the "deterrent
effect doctrine" to establish constitutional standing under the
ADA where she lacks firsthand knowledge that an
establishment is not in ADA compliance; and (2) whether a
plaintiff has constitutional standing where her only
motivation for visiting a facility is to test it for ADA
compliance. We conclude that standing may be asserted in
both circumstances. However, although plaintiffs have
standing to maintain this ADA suit, the district court did not
abuse its discretion in denying class certification. The court
did not err in finding that the plaintiffs failed to meet Rule
23's commonality requirement, given the lack of consistent
policies or practices across the hotels owned by defendant
Hospitality Properties Trust ("HPT"), but operated by
others.

## I.

HPT is a real estate investment trust ("REIT") that owns
hotels across the United States. REITs are vehicles for
investors to own a fraction of a group of real estate holdings.
Under federal statute, REITs are exempt from taxation on
corporate profits; shareholders are taxed only when they

receive dividends.[1]   26 U.S.C. §§ 856–859.   To avoid taxation at the corporate level, REITs must, among other things, remain passive investors and delegate the management of particular facilities.  *Id.* § 856(d)(7).

Named Plaintiffs Ann Cupolo-Freeman, Ruthee Goldkorn, and Julie Reiskin ("Named Plaintiffs") are physically disabled and use wheelchairs for mobility.  Cupolo-Freeman and Goldkorn reside in California, while Reiskin lives in Colorado.  Each phoned an HPT-owned hotel located in her state of residence that provided free local shuttle services, and each was informed that the hotel at issue did not provide equivalent shuttle service for mobility-impaired people.  Each alleges that she would have stayed at the hotel she called but for its failure to provide equivalent shuttle service.  In addition, each alleges that she still intends to stay at the hotel, but that its failure to provide equivalent shuttle service deters her from doing so at present.

Cupolo-Freeman, Goldkorn, and Reiskin, along with the Civil Rights Education and Enforcement Center (collectively "CREEC"),[2] filed a putative class action against HPT in the U.S. District Court for the Northern District of California, alleging that HPT had failed to offer

---

[1] The Senate Finance Committee defines REITs as entities that "receive[] most of [their] income from passive real-estate related investments."  S. Rep. No. 106-201, at 55 (1999).   REITs receive conduit taxation treatment to "permit individual investors to get the benefit of centralized management and diversification without being subjected to an extra layer of corporate taxes."   Boris I. Bittker & Lawrence Lokken, *Federal Taxation of Income, Estates and Gifts* ¶ 99.5 (2017).

[2] After filing this appeal, CREEC voluntarily dismissed its claims before the district court.  Nevertheless, for simplicity's sake, we follow the district court in referring to appellants as "CREEC."

equivalent accessible transportation services at its hotels in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12182(a), 12182(b)(2)(B), 12182(b)(2)(C).

Section 12182(a) provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). A hotel is a public accommodation. *Id.* § 12181(7)(A). Section 12182(b)(2)(B) specifically requires private entities that "operate" "fixed route systems" to provide equivalent service to those with disabilities. *Id.* § 12182(b)(2)(B). Section 12182(b)(2)(C) requires the same of entities that "operate" "demand responsive systems." *Id.* § 12182(b)(2)(C). CREEC alleges that, while most HPT hotels provide some form of free local transportation service, very few provide equivalent service that is accessible to people who use wheelchairs or scooters for mobility.

Before the district court, CREEC moved to certify the class pursuant to Federal Rule of Civil Procedure 23. It defined the class as people with limited mobility who have been or will be denied equivalent transportation services at HPT hotels. CREEC alleges that the common questions of fact and law include "[w]hether Defendant HPT's transportation vehicles are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs," and "[w]hether Defendant HPT has ensured that the transportation system in place at each hotel,

when viewed in its entirety, meets the equivalent service requirements of" the ADA. Fed. R. Civ. P. 23(a)(2). They also assert that certification is proper under Rule 23(b)(2) because HPT "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole."

The district court denied the motion. It held that the proposed class did not meet the threshold Rule 23(a) requirement of commonality because HPT delegates the operation of its hotels to management companies. Deciding CREEC's claims, the district court held, would necessitate 142 "mini-trials" to determine whether the particular practices at each of the 142 challenged hotels violate Title III. In the alternative, the district court held that CREEC failed to meet the Rule 23(a) requirement of typicality, and failed to establish that injunctive relief would be "appropriate respecting the class as a whole," Fed. R. Civ. P. 23(b)(2). CREEC timely appealed.

## II.

The district court had federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343. We have jurisdiction pursuant to 28 U.S.C. § 1291 and Fed. R. Civ. P. 23(f), which allows for interlocutory appeals from denials of class-action certification.

## III.

We first address whether CREEC has properly asserted Article III standing. The following three elements constitute the "irreducible constitutional minimum" of standing: (1) an "injury in fact" suffered by the plaintiff; (2) a causal connection between that injury and the defendant's conduct;

and (3) a likelihood that the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). HPT argues that the Named Plaintiffs have failed to satisfy both the injury-in-fact and redressability requirements. We address these contentions in turn.

### A. The Named Plaintiffs have properly alleged injury in fact.

Article III "requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972). A plaintiff has sustained an injury in fact only if she can establish "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted).

Where, as here, a party seeks injunctive relief, "past exposure to illegal conduct does not in itself show a present case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (alteration omitted). Instead, the plaintiff must allege "continuing, present adverse effects" stemming from the defendant's actions. *Id.*

A plaintiff experiences continuing adverse effects where a defendant's failure to comply with the ADA deters her from making use of the defendant's facility. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 953 (9th Cir. 2011) (en banc). We have dubbed this the "deterrent effect doctrine." *Id.* at 949–50. "[W]hen a plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show actual

injury. . . ." *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002) (quoting 42 U.S.C. § 12188(a)(1)). "So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues." *Id.* at 1137.

The relevant question, therefore, is whether the Named Plaintiffs are presently deterred from visiting HPT-owned hotels. We limit our evaluation to the pleadings. *See Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002) (The elements of standing "must be supported at each stage of the litigation in the same manner as any other essential element of the case.").

The Named Plaintiffs have alleged in the First Amended Complaint that they intend to visit the relevant hotels, but have been deterred from doing so by the hotels' non-compliance with the ADA. They further allege that they will visit the hotels when the non-compliance is cured. Thus, the ADA violations have prevented them from staying at the hotels. Without such averments, they would lack standing. However, "construing the factual allegations in the complaint in favor of the plaintiffs," as we must at this preliminary stage, *Mont. Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 979 (9th Cir. 2013), we conclude that the Named Plaintiffs have sufficiently alleged injury in fact. *Chapman*, 631 F.3d at 953. Their harm is "concrete and particularized," and their intent to visit the hotels once they provide equivalent shuttle service for the disabled renders their harm "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.

HPT contends that this is the wrong result. It offers several reasons why the named plaintiffs cannot meet Article III's injury-in-fact requirement: (1) they did not actually visit

the hotels; (2) they do not intend to do so unless and until the alleged ADA violations are remedied; (3) they are motivated to visit the hotels only by their desire to test them for ADA compliance; and (4) they failed to allege injury in the original complaint, instead doing so only in the First Amended Complaint. None of these facts defeats standing.

1.  The Named Plaintiffs were not required to visit the hotels.

While HPT concedes that a plaintiff need not make repeated in-person visits to ADA non-compliant sites in order to demonstrate that the defendant's noncompliance has deterred her access, *see Pickern*, 293 F.3d at 1135, it contends that a plaintiff cannot satisfy the injury-in-fact requirement unless she has had at least one "personal encounter" with the alleged barrier. HPT argues that the Named Plaintiffs fail to meet this threshold because they merely telephoned the hotels to inquire about transportation services available to disabled guests.

However, the purported requirement urged by HPT of a "personal encounter" with an access barrier lacks foundation in Article III. Actually visiting a hotel, as opposed to phoning, does not make a plaintiff's injury any more concrete: she is deterred from using the accommodation in either event. *See Lujan*, 504 U.S. at 560. It is the plaintiff's "actual knowledge" of a barrier, rather than the source of that knowledge, that is determinative. *Pickern*, 293 F.3d at 1135.

True, whether a plaintiff has visited a facility in the past may be indicative of whether she will do so in the future. Requiring a plaintiff to "personally encounter" a barrier in order to obtain an injunction under Title III might screen out plaintiffs who do not in fact intend to use the facility—that is, plaintiffs for whom an injury is not actually imminent.

*See Lujan*, 504 U.S. at 560.  However, while past actions may constitute "evidence bearing on whether there is a real and immediate threat of repeated injury," *Lyons*, 461 U.S. at 102, they are not necessarily dispositive evidence.  For example, evidence of concrete travel plans would be sufficient to show that a disabled plaintiff intends to visit a facility, even if she has not travelled there in the past.  *See Lujan*, 504 U.S. at 564.  Contrariwise, in the absence of travel plans, a past visit might not be sufficient evidence of imminent future harm.  *See id.*

Requiring a plaintiff to "personally encounter" a barrier would also cause line-drawing problems.  Would it be enough to travel to the hotel and ask the concierge whether the hotel's shuttle service accommodates the disabled, or must a plaintiff actually attempt to use the purportedly deficient accommodation?  If the concierge says there is no accommodation, must the plaintiff perform a visual inspection or review schedules to verify this?  What if the plaintiff is blind?

Nevertheless, HPT insists its "personal encounter" requirement is dictated by precedent, citing a district court case, *Brooke v. Peterson*, 185 F. Supp. 3d 1203, 1207–11 (C.D. Cal. 2016), for this proposition.  Surveying Ninth Circuit cases on the deterrent effect doctrine, the *Brooke* court concluded that our precedent requires a plaintiff to allege "personal, percipient knowledge of [alleged] barriers [to access]" to sufficiently assert standing.  *Id.* at 1207–10.  According to *Brooke*, secondhand knowledge—obtained, for example, from a concierge or the plaintiff's agent—is insufficient.  *Id.*

The *Brooke* court reads too much into our prior cases.  While it places talismanic weight on our use of the term "return" in *Chapman*, 631 F.3d at 953, and *D'Lil v. Best*

*Western Encina Lodge & Suites*, 538 F.3d 1031, 1037–38 (9th Cir. 2008), those cases used the term to distinguish planned visits from past ones, not to differentiate "personal" and "percipient" knowledge from secondhand knowledge. The cases cited in *Brooke* all happened to involve plaintiffs who had observed the lack of accommodation firsthand, but none of them held that this was a constitutional requirement.

Accordingly, we reject HPT's invitation to create a bright-line predicate of a "personal encounter" with a barrier to access as a requirement for standing under ADA Title III. Making case-by-case determinations about whether a particular plaintiff's injury is imminent is well within the competency of the district courts. *See, e.g., Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335–37 (11th Cir. 2013) (assessing various factors in determining whether plaintiff suing under ADA Title III was likely to actually visit the supermarket, including prior visits, proximity of residence to store, plans for future visits, and status as an "ADA tester who has filed many similar lawsuits").

2.  The Named Plaintiffs need not intend to visit the hotels until after remediation.

HPT next contends that the Named Plaintiffs failed to establish "a sufficient likelihood that [they] will again be wronged in a similar way," *Chapman*, 631 F.3d at 948, given their allegation that they do not plan to stay at the hotels unless and until HPT remedies the alleged violations. This argument has some superficial appeal, because courts have denied standing where a plaintiff was unlikely to actually experience a threatened harm. *See, e.g., Morton*, 405 U.S. at 734–35; *Lujan*, 504 U.S. at 562–64.

However, this is really just a roundabout way of challenging the rule that a plaintiff need not engage in a

"futile gesture" to establish Title III standing if she is on notice that the establishment "does not intend to comply" with the ADA. 42 U.S.C. § 12188(a)(1). As we held in *Pickern*, "under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury." 293 F.3d at 1136–37. The injury continues so long as equivalent access is denied. Thus, HPT's contention fails.

### 3. Motivation for visiting the hotels is irrelevant.

Our court has yet to decide whether plaintiffs suing under Title III of the ADA can claim "tester standing." We begin our analysis of this question with *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372–74 (1982), in which the Supreme Court held that testers have standing to sue under Sections 804(d) and 812(a) of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604(d), 3612(a). The Court first noted that Section 804(d) prohibits representations "to *any person* because of race" that a dwelling is unavailable, when in fact it is available. *Id.* at 373. The Court reasoned that Section 804(d) "establishes an enforceable right to truthful information concerning the availability of housing," and that an invasion of this right causes harm that is potentially cognizable under Article III. *Id.* at 373–74. Whereas Congress in Section 804(a) required a "bona fide offer" to rent or purchase before a plaintiff could sue for discriminatory refusal to sell or rent, it included no such limitation in Section 804(d). *Id.* at 374. The Court relied on this absence of limiting language to hold that plaintiffs who "pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices" have standing to sue for violations of Section 804(d). *Id.* at 373–75.

We have held that the disabled may assert tester standing under the FHA. After *Havens Realty* was decided, Congress amended the FHA to specifically prohibit discrimination on the basis of "handicap" in the "terms, conditions, or privileges of sale or rental of a dwelling." 42 U.S.C. § 3604(f)(2). Following the reasoning of *Havens Realty*, we held that tester standing was available under this provision. *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1102–04 (9th Cir. 2004). We reasoned that, as with the provision at issue in *Havens Realty*, § 3604(f)(2) was by its terms not limited to bona fide purchasers. *Id.* at 1104. We held that "[i]nterpreting § 3604(f)(2) to exclude [testers] from enforcing their right to be free from discrimination undermines the specific intent of the [Fair Housing Act Amendments], which is to prevent disabled individuals from feeling as if they are second-class citizens." *Id.*

Only the Tenth and Eleventh Circuits have considered in published opinions whether "tester standing" is viable under Title III of the ADA. The Eleventh Circuit reasoned in *Houston* that nothing in the text of 42 U.S.C. § 12182 constrains the statutorily created right "to be free from disability discrimination in the enjoyment of [a] facility" based on a plaintiff's motive for accessing the facility. 733 F.3d at 1332. Indeed, the court observed, § 12182(a) states that "[n]o *individual* shall be discriminated against on the basis of disability," much like the prohibition against misrepresenting the availability of housing to "*any person*" in *Havens Realty*. *Houston*, 733 F.3d at 1332 (alteration in original). The court also noted that the ADA's enforcement provision, § 12188, provides that "'*any person* who is being subjected to discrimination on the basis of disability' may bring suit," exactly tracking the "any person" language of *Havens Realty*. *Id.* at 1332–33 (quoting 42 U.S.C. § 12188(a)(1)) (alteration in original). Finally, the *Houston*

court pointed out that Congress knows how to limit standing to sue under discrimination statutes to certain groups of people, having done so both in the FHA, *see* 42 U.S.C. § 3604(a) (requiring "bona fide offer" to rent or purchase in order to bring suit), and Title III of the ADA, *see* 42 U.S.C. § 12182(b)(1)(A)(iv) (limiting suits for some actions to "clients or customers of the covered public accommodation"), but that it chose not to do so in § 12182(a). *Houston*, 733 F.3d at 1333. Accordingly, the court reasoned, a plaintiff's status as a tester does not deprive her of the right to sue for injunctive relief under § 12182(a). *Id.* at 1332–34.

The Tenth Circuit has also held that tester standing is viable under Title III of the ADA. *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1210–11 (10th Cir. 2014). The *Colorado Cross* court noted that "Title III provides remedies for 'any person' subjected to illegal disability discrimination." *Id.* at 1211 (quoting 42 U.S.C. § 12188(a)). Thus, it concluded that "anyone who has suffered an invasion of the legal interest protected by Title III may have standing, regardless of his or her motivation in encountering that invasion." *Id.*

We also conclude that motivation is irrelevant to the question of standing under Title III of the ADA. The Named Plaintiffs' status as ADA testers thus does not deprive them of standing.

4. Injury is alleged in the operative complaint.

Citing the general rule that standing is determined "at the time the action commences," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000), HPT argues that two of the three Named Plaintiffs, Goldkorn and Reiskin, lack standing because they failed to include the

factual bases for their allegations in the original complaint. However, "the proper focus in determining jurisdiction are the facts existing at the time the complaint *under consideration* was filed." *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1044 (9th Cir. 2015) (internal quotation marks omitted). The First Amended Complaint was the complaint under consideration when the district court assessed standing, and it remains operative. Goldkorn and Reiskin adequately allege in that complaint that they were injured by HPT hotels' failure to accommodate their disabilities. Accordingly, HPT's argument fails.

**B. The harm suffered by the Named Plaintiffs is redressable.**

HPT also contends that the district court erred in finding that CREEC has standing because the Named Plaintiffs' injuries are not redressable, given that it would be impossible for a court to fashion a class-wide injunction. However, this is just a reiteration of HPT's view of the merits of CREEC's claims. A plaintiff need only show that "a favorable decision will relieve" her injuries. *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982). The Named Plaintiffs have requested that the court fashion an injunction mandating that the HPT hotels comply with the ADA. If the Named Plaintiffs were to prevail and receive their requested relief, then their injuries would be redressed. They have therefore satisfied the redressability requirement, whether or not they are correct on the merits.

**IV.**

A district court's order denying class certification is reviewed for abuse of discretion. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1164 (9th Cir. 2014). Assuming the district court has applied the correct legal standard, the

reviewing court may set aside its decision only if the court's reasoning was "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Id*.

A party seeking class certification must demonstrate that (1) "joinder of all members is impracticable," (2) "there are questions of law or fact common to the class," (3) the named plaintiffs' claims or defenses are typical of those of the class, and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

If a party succeeds in establishing all four of the 23(a) elements, it must then satisfy one of the three requirements of Rule 23(b). CREEC relies on Rule 23(b)(2), which requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." CREEC contends that injunctive relief is appropriate because HPT has failed to ensure the provision of equivalent shuttle services at its hotels, and because the district court could conceivably instruct HPT to implement uniform policies or practices to comply with the ADA.

The district court denied CREEC's class certification motion, concluding that CREEC failed to demonstrate either commonality or typicality. Fed. R. Civ. P. 23(a)(2)–(3). It also held that CREEC failed to satisfy the requirements of Rule 23(b) because the injunction it sought would have been impermissibly vague, nothing more than "a bare injunction to follow the law." *Parsons v. Ryan*, 754 F.3d 657, 689 n.35 (9th Cir. 2014).

Rule 23(a)(2) requires "a common contention . . . of such a nature that it is capable of classwide resolution." *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A contention is common to all members if "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

HPT—a REIT—owns some 302 hotels across the United States. CREEC has alleged that 142 of these hotels operate shuttle services in a manner that violates the ADA. However, HPT does not itself operate the hotels. To enjoy tax benefits under statute, REITs must, among other things, remain passive investors and delegate the management of particular facilities. 26 U.S.C. § 856(d)(7). Accordingly, HPT employs various professional management companies that are "eligible independent contractors" to operate the hotels it owns. An "eligible independent contractor" is a person or corporation that is "actively engaged in the trade or business of operating qualified lodging facilities," and that does not control more than 35 percent of the REIT's shares or voting power.[3] 26 U.S.C. §§ 856(d)(3), 856(d)(9). Although HPT's agreements with the management companies require the latter to "comply with all laws in their fulfillment of their management agreement obligations," those agreements also stipulate that the management companies "shall have sole, exclusive and uninterrupted control over the operation of the Hotels." HPT "does not set or provide the Management Companies with any uniform

---

[3] HPT has contracted its hotel operations out to only a handful of independent operators. According to its website, its 500 hotels are operated by six eligible independent contracting firms, including such household names as Wyndham and Hyatt. *Portfolio*, HPT, http://www.hptreit.com/portfolio/properties/default.aspx (last visited June 28, 2017). Presumably these managers maintain control over the properties they have contracted to manage, could themselves be named as defendants in separate class actions, and could ultimately be held responsible for any discriminatory practices.

policy or plan regarding the operation of shuttle or transportation services at its hotels." Thus, it is the management companies, not HPT, that decide whether to offer local transportation services and that set the terms on which those services operate.

HPT argues that there can be no common question regarding the operation of its hotels as a matter of law, because federal law requires HPT to delegate operating authority to independent contractors if it wishes to maintain its REIT status and the tax benefits that flow therefrom. *See* 26 U.S.C. § 856(l)(3)(A). However, the district court held that the fact that HPT lacks a specific and uniform policy to ensure ADA compliance at its hotels defeated commonality, regardless of HPT's reasons for lacking such a policy. The court reasoned that, absent a legal duty to adopt specific policies to comply with the ADA, "it is unclear how HPT's admitted lack of a policy regarding the operation of shuttle or transportation services could serve as the 'glue' holding together Plaintiff's claims." *Id.* (citing *Wal-Mart*, 564 U.S. at 352). Given that there was no "common offending policy," the court held, "proving that each of the 142 hotels violated the ADA would require 142 trials within a trial." *Id.*

The district court did not abuse its discretion in finding that the class lacked commonality. The court correctly found that HPT did not have a policy regarding how its eligible independent contractors had to comply with the ADA. CREEC insists that HPT maintained an unwritten, *de facto* policy of non-compliance that resulted in widespread ADA violations. *See, e.g.*, *Jimenez*, 765 F.3d at 1165–66 (finding commonality based on alleged unofficial policy of discouraging employees from reporting overtime). However, CREEC has not alleged any facts that would support this theory. On the allegations in the amended

complaint, HPT has done nothing to discourage its contractors from complying with the ADA. Indeed, HPT's contracts require hotel operators to comply with applicable federal and state laws. This is a policy of delegation, not of non-compliance. While commonality may be established based on a "pattern of officially sanctioned . . . [illegal] behavior," *Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2011), merely pointing to a pattern of harm, untethered to the defendant's conduct, is insufficient.

Nor did the district court abuse its discretion in finding that the factual issues regarding alleged ADA violations are significantly different at the various hotels.[4] There is no evidence of a single, "general policy of discrimination" that could serve as a common issue. *Wal-Mart*, 564 U.S. at 352–53. A practice may indeed be evidence of a systematic policy, *see, e.g.*, *Jimenez*, 765 F.3d at 1165–66 & n.5, but it is undisputed that HPT, pursuant to its contracts, does not participate in the management and operation of the hotels. Absent any allegation that HPT somehow discourages its contractors from complying with the ADA, CREEC cannot

---

[4] Specifically, the district court found that:

> While some of the hotels contacted by the Named Plaintiffs are alleged to have not offered any wheelchair-accessible transportation at all, others are alleged to have offered wheelchair-accessible transportation, but required guests to cover the costs. Still other hotels are alleged to have required at least two days advance notice to arrange wheelchair-accessible transportation for a guest, whereas nondisabled guests were required to provide less notice.

*Civ. Rights Educ. & Enforcement Ctr.*, 317 F.R.D. at 101 n.4 (citations omitted).

establish a pattern of discrimination orchestrated by HPT, as it must in order to establish a question of fact common to its claims against HPT.

CREEC tried to avoid this conclusion at oral argument by insisting that HPT has a "nondelegable duty" to comply with the ADA specifically. Nondelegable duty is a tort concept associated with vicarious liability theories. *Restatement (Third) of Torts: Liability for Physical and Emotional Harm* § 57 cmt. b (Am. Law Inst. 2012). Contrary to CREEC's contention, however, the concept "does not mean that an actor is not permitted to delegate [an] activity to an independent contractor." *Id.* Rather, it means that an actor "will be vicariously liable for the contractor's tortious conduct in the course of carrying out the activity." *Id.* Even if HPT would be vicariously liable for ADA violations by its hired contractors, we fail to see how this fact bears on commonality. It would only create a common issue as to where the financial burden of liability would fall, not one regarding the question of that liability. While the latter issue is "central to the validity" of CREEC's claims, *Wal-Mart*, 564 U.S. at 350, the former is not.

The cases the dissent cites for the proposition that similarity of the harm to plaintiffs may constitute a common issue, with nothing more, are inapposite. Those cases all involved a common policy or practice. *See Armstrong v. Davis*, 275 F.3d 849, 863, 868 (9th Cir. 2001) (commonality satisfied where plaintiffs challenged written policy that failed to provide for adequate ADA requirements at parole hearings); *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (commonality satisfied where plaintiffs challenged practice of holding detainees for longer than six months); *Parsons v. Ryan*, 754 F.3d 657, 664, 678 (9th Cir. 2014) (commonality satisfied where plaintiffs made "detailed

factual allegations concerning the existence of uniform, statewide policies and practices in all [Arizona Department of Corrections] facilities . . . [that] expose all . . . inmates to a substantial risk of harm"). To the extent the dissent suggests that HPT has intentionally failed to comply with the ADA, CREEC has not made such an allegation. Intentional noncompliance would amount to an unofficial policy of discrimination—a common issue weighing in favor of class certification. But a "policy *against having* uniform . . . practices" is decidedly not a common issue. *Wal-Mart*, 564 U.S. at 355.

CREEC contends that this result gives multiple-facility owners perverse incentives to vary their operating practices across facilities or contract out operations to independent managers. However, this argument rests on an important unstated premise: that firms will violate the ADA rather than comply with it, so long as they can avoid class-action suits. Assessing whether this premise is empirically true lies beyond judicial competence; altering incentives to comply with the ADA, beyond judicial authority. We emphasize that our holding is limited to the issue of class certification under Rule 23. Whatever the incentives to sue under the ADA, Rule 23 does not require HPT to manage its properties in a manner that would facilitate class actions if and when ADA violations do occur.[5]

Because the district court did not abuse its discretion in concluding that CREEC failed to meet the commonality

---

[5] We do not reach HPT's argument that the ADA does not apply to it because it is not an "operator" of transportation services at the hotels it owns. 42 U.S.C. § 12182(b). First, this issue is not before us, because it goes to the merits, not the issue of class certification. Second, even if this argument were to bear on class certification, we need not reach it because we affirm the district court on other grounds.

requirement, we need not reach CREEC's arguments regarding typicality, remedy, or expert certification.

**AFFIRMED.**

---

MORRIS, District Judge, concurring in part and dissenting in part:

I concur in the majority's determination that CREEC may rely on the "deterrent effect doctrine" to establish constitutional standing under the ADA. I also concur in the majority's determination that CREEC may possess constitutional standing where its members visit a facility solely to test for ADA compliance. I disagree, however, with the majority's determination that the district court did not abuse its discretion in denying class certification under Rule 23. I respectfully dissent from this portion of the majority's opinion.

A unanimous Supreme Court upheld the constitutionality of the public accommodations provisions of the Civil Rights Act of 1964 in *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241 (1964). The Supreme Court agreed that Congress possessed the authority to outlaw discrimination in public accommodations on the basis of race. *Heart of Atlanta Motel, Inc.*, 379 U.S. at 261–62. Congress acted again to outlaw discrimination in public accommodations—this time on the basis of disability.

Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of [accommodations] by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Congress made no distinction

whether the owner was a natural person, a partnership, a corporation, a REIT, or any other type of structure allowed under the law. Congress outlawed discrimination on the basis of disability.

CREEC seeks to root out in a systematic fashion what it perceives to be discrimination against persons with disabilities by HPT and other hotel owners. CREEC has chosen a class action under Rule 23 as its favored vehicle to accomplish the task. The majority reasons that the lack of a "common offending policy" followed by the independent contractors who manage HPT's hotels "would require 142 trials within a trial" to determine whether each hotel and its independent contractor manager violated the ADA. The majority's conclusion will permit HPT to avoid for all practical purposes the consequences of the ADA. CREEC and other advocates of the rights of the disabled now will be required to seek equal treatment one motel at a time.

The majority cites *Armstrong*, 275 F.3d 849, to support its determination that merely pointing to a pattern of harm proves insufficient to satisfy Rule 23. In fact, the Ninth Circuit in *Armstrong* affirmed class certification for a group of prisoners and parolees who suffered from six different categories of disability, including mobility impairments. *Id.* at 854. The plaintiffs alleged that multiple provisions of California's policies and practices during its parole and parole revocation hearing proceedings, at numerous facilities across the state, discriminated against them on the basis of their disabilities. *Id.*

The Board argued on appeal that the wide variation in the nature of the particular class members' disabilities precluded a finding of commonality. The Board contended that separate representative lawsuits should have been filed by the hearing impaired, the vision impaired, the

developmentally impaired, the learning impaired, and the mobility impaired. We disagreed. We noted that plaintiffs in civil rights litigation satisfy the commonality requirement "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Id.* at 868. Individual factual differences among the individual class members did not preclude commonality where all suffered "similar harm from the Board's failure to accommodate their disabilities." *Id.*

Plaintiffs here all suffer from similar harm based on HPT's failure to accommodate their disabilities as required by the ADA. As recognized in *Armstrong*, whether one hotel provides no van service for people with mobility impairments, while another hotel charges extra for van service for people with mobility impairments proves irrelevant to the issue of class certification. Whether all of the putative class members suffer from the failure of HPT's hotels to accommodate their disabilities as required by the ADA instead should drive the analysis. *Id.*

The Ninth Circuit has acknowledged that the "existence of shared legal issues with divergent factual predicates" proves sufficient to satisfy Rule 23's commonality requirement. *Rodriguez v. Hayes*, 591 F.3d 1105, 1123 (9th Cir. 2010). *Rodriguez* reversed the district court's denial of class certification of claims filed on behalf of detainees held without bond hearings pursuant to "general immigration statutes." *Rodriquez*, 591 F.3d at 1113. The government opposed class certification on the ground that class members suffered detention for different reasons and under the authority of different statutes. *Id.* at 1122. We applied the commonality requirement "to look only for some shared legal issue or a common core of facts." *Id.* We determined that the commonality existed in the "constitutional issue at

the heart of each class member's claim for relief." *Id.* at 1123. The denial of equivalent transportation in violation of the ADA stands at the heart of CREEC's claims for relief. This shared legal issue satisfies the commonality requirement as applied in *Rodriguez*, 591 F.3d at 1122.

With respect to typicality, *Armstrong* again proves instructive. The plaintiffs satisfied the typicality requirement based on their same injury: "a refusal or failure to afford them accommodations as required by statute." *Armstrong*, 275 F.3d at 869. In the case of mobility impaired persons, their injuries lied in their "inability to overcome the physical barriers to attendance" at the hearings. *Id.* As a result, all of the class members suffered the deprivation of services provided by the Board. *Id.*, citing 42 U.S.C. § 12132. It mattered not that one Board facility may have failed to provide van transportation for mobility impaired prisoners, while another Board facility may have failed to provide hearing or translation assistance for hearing impaired prisoners. It mattered that the Board failed to provide the accommodations required by law. *Armstrong*, 275 F.3d at 869. The Ninth Circuit in *Rodriguez*, 591 F.3d at 1124, likewise concluded that the fact that the government detained putative class members under different statutes and that some putative class members stood at different points in the removal process failed to defeat the typicality requirement. All putative class members suffered from the same practice of prolonged detention while in immigration proceedings. *Id.*

CREEC suffers from a similar alleged deprivation of transportation services provided by HPT's hotels. Plaintiffs allege that HPT's hotels have refused or failed to afford them the accommodations required by the ADA. *Parsons v. Ryan*, 754 F.3d 657, 672 (9th Cir. 2014), upheld class certification

of Eighth Amendment health care and conditions-of-confinement claims brought by "[a]ll prisoners who are now, or will in the future be, subjected to the medical, mental health and dental care practices of the [Arizona Department of Corrections]." A broader and more diverse group of claims seems difficult to contemplate. Arizona could not contemplate a more diverse group of claims as it argued that "Eighth Amendment healthcare and conditions-of-confinement claims are inherently case specific and turn on many individual inquiries." *Parsons*, 754 F.3d at 675. The Ninth Circuit determined instead that alleged policies and practices of statewide applications "expose all inmates in ADC custody to a substantial risk of serious harm." *Id.* at 676. We too should recognize that the alleged practices of HPT's hotels in failing to comply with the equivalent transportation requirement of the ADA exposes CREEC and its members to a substantial risk of serious harm.

HPT's decision to establish a REIT as its preferred ownership structure should not shield HPT from its alleged systematic effort to evade the equivalent transportation requirements of the ADA. The majority's conclusion that CREEC's claims would require 142 mini trials within a trial should defeat class certification allows HPT to shirk its responsibilities as the owner under the ADA. I believe that CREEC has satisfied the commonality and typicality requirements of Rule 23, as analyzed by the Court in *Armstrong*, *Rodriguez*, and *Parsons*.